(Hamilton County Common Pleas.)

EQUITABLE NATIONAL BANK v. GUCKENBERGER, REC'R.

Where the petition shows that the purpose is to divest the duly elected officers of a solvent corporation of the conduct of its affairs, by the appointment of a receiver, and that no ultimate relief is sought, saving the mere appointing of a receiver, and the disposing of the affairs of the corporation into his hands, while the directors show that they were quite ready to be relieved of the duty of paying attention to their own affairs, and glad to abandon the performance of their trust in case the court should feel a willingness to assume their functions, the prayer for a receiver should be refused.

The term "estoppel" is no synonym for mere "assent;" it is necessary to the operation of an estoppel, first, that some one should urge it, and second, that he who did urge, must cause it to appear how in some wise or other he would be made to undergo a mischief in case the party to be estopped has suffered to deny a construction possible to be put upon his prior act or conduct.

---

WRIGHT, J., dissenting.

There was in my judgment but a single ground set out in the original petition, which by per adventure at all warranted the appointment of a receiver—this was an allegation that the "Directors have declined to call any meeting of their board since April 12, 1895, and have refused to meet for the purpose of devising ways and means of paying the company's maturing obligations, and have refused to meet and have failed to devise ways and means for the payment of the indebtedness of said company." If it be said that these averments warranted the appointment of a receiver upon the petition, yet such an appointment was only justifiable for a mere temporary purpose, that is to say, only until a new board of directors had been elected; yet the appointment was not made upon this ground, and has not been undertaken to be justified upon this ground; and further, upon the motion to discharge the receiver, these allegations were positively and emphatically disproven.

Apart from them, my judgment is that the petition not only failed to set forth facts which justified the receiver, but affirmatively set forth sufficient matter of

fact to demonstrate that the whole case made, was one wherein a receiver was improper; it was not an action to dissolve the corporation, neither was the corporation insolvent; the petition averred among other things, "that the premises, buildings, machinery and apparatus together with the good will of said business, are fairly worth the sum of $125,000, and that said company now has on hand twines and cordage manufactured and ready for sale of the value of $30,000, and unmanufactured stock on hand amounting to $70,000, and also a large amount of out-standing accounts; that the business of said company is of great value, and in ordinarily good times is capable of earning large profits; that the liabilities of said company in open accounts, amount to about $15,000, and other indebtedness in the form of bills payable, amount to about $10,000; that all the indebtedness of said company does not nearly equal the amount of the assets conservatively estimated; that, notwithstanding the facts above stated, said company is embarrassed and unable for want of funds to meet the liabilities now due and such as will mature in the near future." The prayer of the petition is as follows: "Plaintiff therefore prays that the court order such steps to be taken as may be necessary to ascertain the total indebtedness of said company, and to cause the same to be paid from its business and assets in the manner most speedy and equitable, and that in the meantime a receiver be appointed to take possession of all the property and assets of said company with directions to continue the operation of said business until further order of court, and for such other and further relief as may be proper in the premises." In short, the petition in its ensemble showed that the project was to divest the duly elected officers of a solvent corporation of the conduct of its affairs, and that no ultimate relief was sought or contemplated, saving the mere appointing of a receiver, and the disposing of the affairs of the corporation into his hands. The answer of the directors shows no more than that they were quite ready to be relieved of the onerous oppressiveness of paying attention to their own affairs, and glad to abandon the performance of their trust duties in case the court should feel a willingness to assume their functions.

It has always seemed to me that judicial tribunals are constituted for the exercise of judicial functions upon legitimate contentions and controversies submitted by parties, and not for the purpose of operating commercial enterprises for the mere accomodation of those who lack capacity to manage their own affairs. And I am bound to say, that it seems to me that the appointment of a receiver to conduct the affairs of a corporation is justifiable only as a provisional remedy, ancillary to the securement of some other main and ultimate relief which is sought in the action. The one seeming (but perhaps unreal) exception to

COPYRIGHT, 1898, BY CARL G. JAHN.

this rule, I have thought is to be found in the appointment of receivers for common carriers, which is justifiable upon grounds not at all attendant on cases of mere private enterprises. The paramount obligations of common carriers, are to the public, and the public has such a very great interest and concern in seeing them preserved intact—and in requiring an uninterrupted continuance of their operation, that it is fairly against public policy, and in public detriment to suffer their disintegration to be effected by temporary embarrassment when the ills attendant upon that result can be averted from the public by taking their affairs for a time into the hands of an officer of court. But I can see no more jurisdiction given to courts to constitute themselves as general managers of the affairs of private corporations whenever they happen to be invited to such a situation, than I can see jurisdiction given to courts to engage themselves as members of partnerships formed for commercial enterprises. If I have entertained a grave doubt about the sufficiency of the petition upon its face to justify the appointment of a receiver, yet I entertain no manner of doubt at all, but that the receiver ought to have been discharged upon the hearing; as has been said, the petition showed the corporation solvent; and the hearing developed not that the directors were refusing to attend to the affairs of the corporation, but that they were attending to them in such way as would probably require the petitioner to devise means for the payment of some $30,000, which the Jacobs' estate which plaintiff represented, owed the corporation; the hearing further developed that the application had been made by her, for the reason that she, being a majority stockholder, was unable to force upon the board of directors her choice of the policy to be pursued, and further, that the board of her choice had failed to be returned at a stockholders' election held a few moments prior to the filing of her petition.

Upon the point of the estoppel I am unable to agree; it is by my learned brethren put upon these several grounds:

1st.—Acceptance of dividends.

2nd.—That entries authorizing the continuance of the business and for the sale by the receiver of the property were suffered to be made without an especial and specific objection from the bank.

3d.—Because in its supplemental answer and cross-petition the plaintiff in error alleged that the receiver had converted the assets of the corporation into cash, and because it therein prayed the court to order payment of its claim out of the proceeds.

Upon the first point, I must say that it was at the hearing before us argued by counsel, that whatever dividends were accepted by the Bank, were accepted under an express agreement that its rights should not be suffered to be prejudiced thereby; and even if it be said that the receiver was without authority to bind creditors by such an agree-

ment, yet it seems to me that if objection to such an agreement is to be heard, the objection ought to come from creditors, not from the receiver. As far as I have been able to hear at all, neither creditors nor receiver have presented the point. Nevertheless, it seems to me bad precedent to say that a party shall be lured to the acceptance of a portion of his due through an agreement held out by the court's officer that his rights shall be saved; and that thereupon the court itself shall turn upon the party and cut him out of his right for that he presumed to an abiding faith and confidence that its representative would keep faith. It rather seems to me that the high plain of morality and fair dealing, whereon courts are supposed to exercise their functions, demands that no officer of court shall be permitted by questionable practices to cajole parties out of their rights. If any one is to lose, let it be the officer of court; if the receiver had no right to make the agreement let him off-set his blunder by enduring its consequences.

Upon the second point, I can see no estoppel in that these certain entries came to be made without specific objection from plaintiff in error. An entry authorizing the receiver to continue the business was made upon the very day of his appointment, June 7, 1895. Plaintiff in error became a party and filed its petition upon Nov. 2, of the same year. I have not discovered how in the nature of things it could have made specific objection against the entering of an order which had been made and was in operation for full five months before it ever was a party. The full and only purpose of its petition was to assail the validity of the entire receivership, and to vacate this appointment; it was objecting to and endeavoring to contend against the receivership itself, in its entirety; no entry of directions to the receiver, could rise to be greater and more comprehensive than the receivership itself; no such entry could but be a thing subservient to the main project and a part of it; objecting and protesting against the whole, I believe carried along an objection and a protest against all that amounted to no more than a mere part. And, at best, it is merely by the application of nice technicality that it is able to be said that the plaintiff in error had notice of the entries at the time they were made; for no reason save that it happened to be a party to the suit; there is nothing in the record which at all tends to show actual knowledge of these entries; and even had there been actual knowledge of the entries, an objection to them would have gone directly in the face of the prayer of the Bank's supplemental petition, which prayed that its claim might be paid out of the proceeds of the sale.

Generally, upon the question of estoppel, it seems to me that the term "estoppel" is no synonym for mere "assent"; I have thought it necessary to the operation of an estoppel, first, that some one should urge it,

and second, that he who did urge, must cause it to appear how in some wise or other he would be made to undergo a mischief in case the party to be estopped was suffered to deny a construction possible to be put upon his prior act or conduct; the receiver cannot be said to have been misled to a belief that the Bank by accepting dividends, or by failing to make of itself a stumbling block in the way of his every footstep, had recognized or conceded the validity of his appointment; that he did not so believe is doubtless shown in that he has all the time retained and now has in his possession a sum expressly reserved to meet the claim of the Bank in full, in case the litigation should at the end go in its favor. Had the conduct of the bank been such as to mislead him into divesting and stripping himself of all trust funds, then time enough to cry estoppel; this is not that case; the Record of July 20, 1897, displays an entry in words as follows:

"Upon application of Charles Guckenberger, receiver, and it appearing to the court that he has on hand money enough, after retaining sufficient to satisfy the claims of the Equitable National Bank, now in litigation in this court, to pay a fourth dividend to creditors of eight per cent.

"It is ordered that said receiver be, and he is hereby directed to pay to the creditors of the defendant corporation, a fourth dividend of eight per cent."

I must say, that in my opinion the receiver should have been discharged upon the hearing, and that the order denying the application for his discharge ought to be reversed.